IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NEIL D.R.,[1]
    Plaintiff,

        v.                                  Civil No. 3:21-cv-000422 (REP)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying the application of Plaintiff for supplemental security income under the Social Security Act (the "Act"). Plaintiff was fifty-three years old at the time of his application and previously worked for a nursing company and as a construction worker. (R. at 207, 238.) He alleges he is unable to work due to a stroke. (R. at 237.)

On October 30, 2019, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 7-18.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

Plaintiff seeks review of the ALJ's decision, arguing that: (1) the ALJ failed to evaluate Plaintiff's mental limitations in accordance with the regulations; and (2) the ALJ's residual functional capacity cannot be supported by substantial evidence when she does not find any medical opinion persuasive. (Pl.'s Br. Supp. Mot. Summ. J. 1, 10-12, ECF No. 23 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 22) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on January 23, 2018, alleging disability beginning December 8, 2017. (R. at 207.) The SSA denied Plaintiff's claims on July 24, 2018, and again upon reconsideration on September 21, 2018. (R. at 136-51, 151-64.) Plaintiff requested a hearing before an ALJ, and a hearing was held on August 29, 2019. (R. at 184-86, 91-135.) On October 30, 2019, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 7-22.) Plaintiff requested review of the ALJ's decision, and on August 3, 2020, the SSA Appeals Council denied it, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).[3]

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

---

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's

five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 416.925(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. § 416.920(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 10-18.) *See* 20 C.F.R. § 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 14, 2017. (R. at 12.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) cerebrovascular accident; and (2)

osteoarthritis. (R. at 12.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, and 416.926). (R. at 13.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 13.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following exceptions: "[Plaintiff] can frequently operate foot controls with the left lower extremity; he can frequently operate hand controls with the left upper extremity; he can frequently reach overhead with the left upper extremity; and he can frequently climb, balance, stoop, kneel, crouch, or crawl." (R. at 13.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior administrative medical findings, in accordance with the regulations. (R. at 13.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff is able to perform past relevant work as a home healthcare worker. (R. at 18.) As the ALJ found Plaintiff was able to perform past relevant work she did not need to continue to step five. (R. at 18.) Accordingly, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 18.)

## IV. ANALYSIS

Plaintiff requests remand because: (1) the ALJ failed to properly evaluate Plaintiff's mental limitations in accordance with the regulations, and (2) the ALJ's residual functional capacity is legally erroneous as she did not find any medical opinion persuasive. (Pl.'s Mem. at 1, 10-12.) Defendant responds that substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairments, and she did not err in her residual functional capacity assessment when she evaluated

the medical opinions. (Def.'s Mot. Summ. J. 11-17, ECF No. 25 ("Def.'s Mem.").) For the reasons that follow, this Court finds that the ALJ did not err, and substantial evidence supports the ALJ's decision to find Plaintiff not disabled under the Act.

> **A. The ALJ Did Not Err Evaluating Plaintiff's Mental Limitations as Plaintiff Did Not Meet his Burden to Demonstrate the Existence of a Medically Determinable Impairment Through Medical Evidence.**

Plaintiff first argues the ALJ erred by improperly evaluating his mental limitations. (Pl.'s Mem. at 1.) Defendant asserts that the ALJ did not err because the record did not support Plaintiff's alleged mental impairments. (Def.'s Mem. at 12-13.)

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 CFR §416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 CFR §§ 404.1508, 404.908. Further, the impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statement of symptoms." *Id.* Additionally, an impairment must "have lasted or must be expected to last for a continuous period of at least 12 months." 20 CFR § 404.1509.

Plaintiff argues that the ALJ did not assess Plaintiff's functional limitations in his ability to understand, remember, apply information, interact with others, concentrate, persist, maintain pace, and adapt/manage himself. (Pl.'s Mem. at 5-6.) However, Plaintiff does not identify sufficient evidence within the record that would support his assertion that he has a medically determinable impairment that would require the ALJ to review his mental limitations. (Pl.'s Mem. at 5-10, Pl.'s Reply Mem. 1-4, (ECF No. 26) ("Pl.'s Reply.").) Defendant asserts that other than a psychiatric consultative exam, Plaintiff received "no treatment whatsoever for any mental

impairment…", and therefore the ALJ properly declined to consider mental impairments at steps two and three. (Def.'s Mem. at 12-14.)

Plaintiff has the burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) ("The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."); *see also* 20 C.F.R. § 404.1508 (a claimant must establish the existence of a medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques").

On July 6, 2018, Karen L. Russell, Psy.D. ("Dr. Russell") conducted a psychological evaluation of Plaintiff. Prior to that psychological evaluation, the record does not contain medical evidence relating to Plaintiff's mental impairments. In support of his argument that the ALJ erred by improperly evaluating his mental limitations, Plaintiff notes that Dr. Russell "diagnosed [him] with adjustment disorder, finding him to be frustrated and depressed as [a] result of adjusting to his physical loss of functioning." (Pl.'s Mem. at 4 citing R. at 387.) However, Dr. Russell further clarifies her diagnostic impression by stating that:

> [f]rom a cognitive standpoint though, [Plaintiff] does not have any significant cognitive deficits. There is no clinical record that describes any sort of observed cognitive deficits. It appears that he is more so having some frustration, mild depression which is an adjustment to his changes in his gross motor control and stability.

(R. at 387.) Dr. Russell further noted that Plaintiff "appears to have the mental capacity to maintain regular attendance in the work setting" and that "his weaknesses appear to be predominantly from a physical health standpoint." (R. at 387.) Dr. Russell concluded that Plaintiff "does not appear to have any sort of thought disturbance that would impact his ability to complete a normal workday." (R. at 387.)

In addition, Dr. Russell noted issues with Plaintiff's credibility and reliability (R. at 384-88.). Dr. Russell also questioned Plaintiff's effort during his examination. (R. at 384-88.)

On May 21, 2018, Malinda Brooks-Williams, M.D. ("Dr. Brooks-Williams") failed to note that Plaintiff had any neurological or psychological symptoms. (R. at 399-401.) On August 13, 2018, Dr. Brooks-Williams noted that Plaintiff was "positive for forgetful due to the stroke." (R. at 397.) However, at a follow-up appointment just eight days later, Dr. Brooks-Williams made no mention of Plaintiff's forgetfulness. (R. at 395.)

The ALJ properly declined to consider Plaintiff's alleged mental impairments as Plaintiff had not met his burden to establish he had a medically determinable impairment. Plaintiff's records do not reflect mental impairment(s) "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's] statement of symptoms." 20 CFR §§ 404.1508, 404.908. Additionally, Plaintiff did not show his impairment lasted or was "expected to last for a continuous period of at least 12 months." 20 CFR § 404.1509. Therefore, the ALJ did not err in declining to assess the severity of Plaintiff's alleged mental impairments.

**B. The ALJ Did Not Err in Her Residual Functional Capacity Assessment When She Evaluated the Medical Opinions.**

Plaintiff alleges that substantial evidence does not support the ALJ's residual functional capacity because the ALJ rejected every medical opinion regarding his physical functioning.[4] (Pl.'s Mem. at 10-13.) Defendant asserts that the ALJ properly weighed the medical opinions, and if an error was made, it was harmless. (Def.'s Mem. 15-19.) More specifically, Defendant contends that even if the medical opinions were adopted in full, they would not support a finding that Plaintiff

---

[4] As Plaintiff specifically limits this point to the ALJ's determination of Plaintiff's physical limitations the Court will only review opinions regarding physical limitations for this issue.

was disabled. (Def.'s Mem. 15-19.) Plaintiff responds by asserting that the alleged error is not harmless, and remand is necessary. (Pl.'s Reply at 6-7.)

For social security disability cases filed after March 27, 2017, an ALJ evaluates medical opinions in accordance with 20 C.F.R. § 416.920c.3. Medical opinions are evaluated for supportability, consistency, relationship with the claimant (including length of the treatment, relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship), specialization, and other factors that tend to support or contradict a medical opinion. The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b) and (c). An ALJ does not defer or give specific evidentiary weight to any medical opinion, including those from a claimant's medical source. 20 C.F.R. § 416.920c(a). Although the amended regulations no longer discuss the "weight" given to medical opinions, an ALJ's reason for finding an opinion persuasive or unpersuasive still must be supported by substantial evidence. Because Plaintiff filed his application after March 27, 2017, the revised regulations apply in this case.

The crux of Plaintiff's argument is that since the ALJ found the medical opinions to be unpersuasive as to Plaintiff's limitations, there is insufficient evidence to support the ALJ's residual functional capacity assessment. (Pl.'s Mem. at 10.) Plaintiff reasons that the ALJ's decision is not supported by a single medical source, and she substituted her own lay interpretation in crafting the residual functional capacity. (Pl.'s Mem. at 10.)

Under the regulations promulgated for claims filed after March 27, 2017, an ALJ need not "defer . . . to any medical opinion." 20 C.F.R. §§404.1520c(a), 416.920c(a). In this matter, Sari Eapen, M.D. ("Dr. Eapen") concluded Plaintiff "could stand and/or walk up to five hours in an eight-hour workday, and could sit 'with change of position,' and occasionally kneel or crouch."

(R. at 15.) The ALJ found this opinion unpersuasive, as Dr. Eapen's physical evaluation of Plaintiff was mostly normal. (R. at 15.) Further, the ALJ stated that Plaintiff's providers conducted physical exams which resulted in mostly normal findings. (R. at 15.) Also, the ALJ noted that Dr. Eapen questioned whether Plaintiff was giving full effort during the exam. (R. at 15.) Plaintiff's orthopedist, Miles Birmingham, D.O. ("Dr. Birmingham"), submitted a functional assessment. (R. at 641-42.) He found Plaintiff's limitations would not last longer than twelve months past the onset date. (R. at 642.) Dr. Birmingham determined that Plaintiff: (1) could frequently[5] lift up to twenty-five pounds; and (2) would be able to sit for an hour and stand or walk for two hours in an eight-hour workday. (R. at 641.) The ALJ also found Dr. Birmingham's opinion unpersuasive as it only focused on his ankle injury and the limitations were only for a twelve-month period. (R. at 17.)

In her analysis of these medical opinions, the ALJ explained that their statements are not supported by the record or consistent with the record as a whole. (R. at 17.) Overall, the ALJ found that the record contained sufficient evidence that Plaintiff's "physical examinations were consistently normal if not close to it, and [Plaintiff] sought treatment sporadically." (R. at 17.) The ALJ added that Plaintiff's received consistently conservative treatment and assessed the residual functional capacity accordingly. (R. at 17-18.)

In assessing Plaintiff's residual functional capacity, the ALJ cited specific medical and nonmedical evidence. (R. at 14-18.) The ALJ discussed Plaintiff's medical records, physical exams, and his assertions to the SSA. (R. at 14-17.) The ALJ discussed Plaintiff's emergency room visits and his stroke. (R. 14.) The ALJ also discussed how Plaintiff's stroke was the result of small blood vessel disease, so medication was sufficient to treat it. (R. at 14.) The ALJ summarized

---

[5] Dr. Birmingham's functional assessment defines frequently as 34%-67% of an eight-hour workday. (R. at 641.)

Plaintiff's physical exams with his primary care physician. (R. at 14.) She further noted that Plaintiff was referred for imaging which showed mild degenerative changes in his neck and mild osteoarthritis in his left shoulder. (R. at 14.)

The ALJ also considered the nonmedical evidence, such as Plaintiff's assertions to the SSA regarding his day-to-day functions. (R. at 17.) The ALJ noted that Plaintiff maintained that he could not walk for more than five minutes at a time, he could do basic tasks around his home but asserted the tasks took longer and were more difficult than they used to be. (R. at 17.) The ALJ also addressed Plaintiff's testimony during which he described similar issues, but asserted walking was more difficult and his hands were weaker. (R. at 17.) *See generally* Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) (a residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). In doing so, the ALJ sufficiently identified the evidence that supported her conclusion and built an accurate and logical bridge from that evidence to her conclusion that Plaintiff was able to perform medium work as defined in 20 CFR 416.967(c), "except he can frequently operate foot controls with the left lower extremity; he can frequently operate hand controls with the left upper extremity; he can frequently reach overhead with the left upper extremity; and he can frequently climb, balance, stoop, kneel, crouch, or crawl." (R. at 13.)

A review of the ALJ's explanation of Plaintiff's medical and nonmedical evidence demonstrates that the ALJ thoroughly reviewed the available record and determined, using the supportability and consistency factors articulated above, that the medical opinions of Dr. Eapen and Dr. Birmingham were not persuasive because: (1) their own physical examinations conflicted

with their asserted limitations; (2) the asserted limitations were not supported by the record as a whole; and (3) Dr. Birmingham's opined limitations were limited to a twelve month duration. (R. at 15-17.) Plaintiff's generalized assertion that the ALJ's opinion evaluations left her understanding of the medical evidence inadequate fails to show how the ALJ ran afoul of applicable law and resulted in harmful error. *See Lemmonds v. Berryhill*, No 3:16-CV-120-RLV-DCK, 2017 WL 9516603, at *5 (W.D.N.C. Feb. 21, 2017) ("Plaintiff clearly disagrees with the ALJ's decision, but fails to offer any persuasive argument or authority that the ALJ did not follow the proper legal standards and/or did not rely on substantial evidence in reaching his determination"). As the ALJ followed the revised rules, explained her evaluations on opinion evidence, and built a "logical bridge from the evidence to [her] conclusion," the ALJ's opinion evaluations are supported by substantial evidence. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Therefore, this Court finds no error in the ALJ's residual functional capacity evaluation and her evaluation of the medical opinion evidence.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 22) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: <u>July 18, 2022</u>